Eastern District of Kentucky
FILED

AUG 1 4 2006

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 04-63 (WOB)**

**AMERICAN CONTRACTORS INS. CO.**                    **PLAINTIFF**

**VS.**                          **OPINION AND ORDER**

**UNITED NAT'L INS. CO.**                              **DEFENDANT**


This is an insurance coverage dispute in which jurisdiction is based on diversity. This matter is before the court on the parties' cross motions for summary judgment. (Doc. #20, #22)

Having heard the parties, and having reviewed additional documentation submitted by plaintiff in support of its position, the court now issues the following opinion and order.

### *Factual Background*

In December 2002, Centers Contracting, Inc. ("Centers") contracted with the City of Williamstown, Kentucky to install a sewage drainage system, known as the Williamstown Water System and Improvement Project ("the Project"). This contract required Centers to furnish a performance and payment bond in connection with its work, which Centers acquired through American Contractors Indemnity Company ("ACIC"). At all relevant times, Centers also had in effect a commercial general liability ("CGL") policy issued by United National Insurance Company ("United National").

The United National policy covers certain property damage

occurring during the policy period, subject to the following exclusions:

>    2.   Exclusions.
>
>    This insurance does not apply to:
>
>    * * * * * * * *
>
>    j.   Damage to Property
>         "Property damage" to:
>
>    * * * * * * * *
>         (5)   That particular part of real property on which
>               you or any contractors or subcontractors
>               working directly or indirectly on your behalf
>               are performing operations, if the "property
>               damage" arises out of those operations; or
>
>         (6)   That particular part of any property that must
>               be restored, repaired or replaced because your
>               work was incorrectly performed on it.

(Policy at 3)

In addition, an endorsement to the policy provides an

exclusion for "Subsidence":

>    This policy does not apply to "bodily injury", "property
>    damage", "personal injury" or "advertising injury" directly or
>    indirectly arising out of, caused by, resulting from,
>    contributed to or aggravated by the subsidence, settling,
>    sinking, slipping, falling away, caving in, shifting, eroding,
>    mud flow, rising, tilting, or any other movements of land or
>    earth.

(Endorsement SL-18)

In April 2003, Centers began to bore under Interstate 75 in

order to lay a water main under the highway.  The Project plan

called for this bore to extend from the east side of I-75 to the

west side.  I-75 is a federal highway bordered on each side by a

state right-of way controlled by the Commonwealth of Kentucky. A fence marks the boundary of the state right-of-way. The City of Williamstown obtained an encroachment permit for Centers to intrude on the state right-of-way on the east side of I-75 in order to set up a bore pit and the bore machinery.[1]

Jimmy Cornett, Centers' general superintendent on the Project, hired Derrick and Rick Cole as subcontractors to assist him in completing the I-75 bore. The bore operation proceeded approximately 200 to 300 feet into the tunnel, at which point the auger bit on the boring machine got stuck. Unable to proceed, Cornett traveled to Centers' office to inform Glen Centers, the President and owner of Centers, of the situation.

When Cornett returned to the Project site the following day, he discovered that the Coles had taken equipment being used on the project around to the west side of I-75, entered the state right-of-way area, and dug out a large section of the sloped embankment adjacent to the highway in an effort to recover the stuck auger. Unable to reach the auger, the Coles had backfilled the soil into the excavated area. As it turned out, however, they did not properly compact the soil when they replaced it.

When Cornett first observed that the slope on the other side had been disturbed, there was no visible effect on the highway

---

[1]This encroachment permit was filed of record on June 19, 2006, following oral argument. (Doc. #51)

3

surface.  However, dips and cracks began appearing approximately four weeks later and, ultimately, the slope gave way and a section of the asphalt in the southbound lane sank.

Centers eventually abandoned the Williamstown project and filed for bankruptcy.  ACIC, called on by the City of Williamstown to make good on its surety bond, hired Hale Contracting to repair the embankment and southbound lane of I-75 and to complete the Project.  The cost of the repairs totaled $92,617.00.

United National declined to provide coverage for the repairs under Centers' policy.  Williamstown assigned its rights to ACIC, and ACIC filed this action against United National on March 31, 2004.[2]

### Analysis

United National does not dispute that the costs for which plaintiff seeks coverage arise out of "property damage" that occurred within the effective date of this policy.  Defendant asserts, however, that two "business risk" exclusions preclude coverage:

---

[2]Centers also filed an action against United National in state court, which was removed to Lexington Division of this court on May 21, 2004, and later transferred to the Covington division as a related case.  The bankruptcy trustee of Centers subsequently abandoned the claims against United National, and that case was dismissed on January 30, 2006.

2.   Exclusions.

This insurance does not apply to:

*********

j.   Damage to Property
     "Property damage" to:

*********
     (5)   That particular part of real property on which
           you or any contractors or subcontractors
           working directly or indirectly on your behalf
           are performing operations, if the "property
           damage" arises out of those operations; or

     (6)   That particular part of any property that must
           be restored, repaired or replaced because your
           work was incorrectly performed on it.

Such "business risk" exclusions "are intended to exclude
coverage for risks that are inherent in performing a particular
type of work." *LISN, Inc. v. Commercial Union Ins. Co.*, 615 N.E.2d
650, 654 (Ohio App. 1992) (citation omitted). That is because "the
purpose of a commercial general liability policy is not to cover
faulty workmanship." *Parrott v. Hoosier State Constr., Inc.*, No.
3:02CV-499, 2006 WL 861307, at *3 (W.D. Ky. Mar. 26, 2006) (further
noting that "it would be economically inefficient for an insurance
policy to protect against risks that appropriate business
management could and should control").

In *Standard Constr. Co., Inc. v. Maryland Cas. Co.*, 359 F.3d
846 (6th Cir. 2004), the Sixth Circuit discussed such business risk
exclusions, concluding on the facts before it that these exclusions
did not operate to preclude coverage for trespass claims by a third

party whose property was damaged by the actions of a subcontractor which was trespassing on the property. In so doing, the court noted:

> In the instant case, it is not the *manner* in which the dumping was performed (the "work") that is faulty or caused damage, but rather that the dumping itself at the location in question was unauthorized. . . . The damage was to the land, not to the insured's "work." Therefore, there is coverage for "property damage" and the "your work" exclusion does not apply.

*Id.* at 852 (citation omitted) (italics in original). The court further quoted with approval the following treatise discussion regarding CGL insurance in the construction industry:

> However, in addition to and apart from those risks [of third party injury or damage], the contractor likewise has a contractual business risk that he may be liable to the owner resulting from failure to properly complete the building project itself in a manner so as to not cause damage to it. *This risk is one the general contractor effectively controls and one which the insurer does not assume because it has no effective control over those risks and cannot establish predictable and affordable insurance rates.*

*Id.* at 853 (quoting Peter J. Neeson & Phillip J. Meyer, *The Comprehensive General Liability Policy and Its Business Risk Exclusions: An Overview*, 81-81, reprinted in *Reference Handbook on the Comprehensive General Liability Policy* (American Bar Ass'n 1995) (emphasis added).

The business risk exclusions in the United National policy -- j(5) and j(6) -- are unambiguous and apply to the facts of this case. ACIC seeks to recoup costs here that are a direct consequence of work performed incorrectly by the Coles on Centers'

6

behalf in the course of carrying out the boring operation. The negligent manner in which that work was performed caused damage to property that had to be repaired as a result.

Plaintiff argues that the exclusions should not apply because the Project plan did not contemplate entry into the state right-of-way on the west side of I-75, but rather that the bore, had operations gone smoothly, was meant to emerge beyond that area.

This argument is in tension with the plain language of the exclusions. Exclusion j(5) applies to property upon which the insured (or someone on its behalf) is "performing operations." There is no dispute that the Coles' negligent excavation was performed in an effort to retrieve the stuck auger, or that the auger was an integral part of the Project. Plaintiff's argument would require the court to read the exclusion as applying only to property where the insured was "supposed to be performing operations." Moreover, it is undisputed that, once the bore emerged on the west side of the highway, Centers was to continue laying the water line in that side. The right-of-way section on the west side thus was, physically speaking, within the project area viewed as a whole.

The court has reviewed the encroachment permit and finds that it impliedly authorizes the emergency work performed by the subcontractor here. Reacting to the emergency and attempting to repair damage caused to the right-of-way is contemplated by the

7

contract and thus falls under the definition of "your work." The repair work was within the scope of the contract, as was the place where it was performed. Therefore, it is excluded.

Cases cited by defendant support this outcome.[3] In *Alverson v. Nw. Nat'l Cas. Co.*, 559 N.W.2d 234, (S.D. 1997), the Supreme Court of South Dakota held that the j(6) exclusion precluded coverage where a masonry subcontractor damaged windows in an attempt to clean them after inadvertently splattering them with mortar. The court reasoned:

> "Your work" is defined as "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations."

> Alverson and his employees worked on the windows to remove the mortar from them. *The key fact is that the windows were not damaged before the cleaning and could have been cleaned without being damaged. . . . His employees did the work incorrectly and the windows had to be replaced.*

> Section (6) excludes damage to *any* property, which includes the windows, that must be replaced because "your work" was incorrectly performed on it. . . "[Y]our work" is defined in the policy as "work or operations performed by you or on your behalf." *The window cleaning was "work" done "by" Alverson and his employees and it was done as part of the masonry contract. While work on windows was not included in the masonry contract, it became Alverson's work to clean them incidental to the contract. . .* Accordingly, the exclusion applies and there is no coverage.

*Id.* at 236 (emphasis added).

Similarly, in *LISN, Inc. v. Commercial Union Ins. Co.*, 615 N.E.2d 650 (Ohio App. 1992), the court held that the j(6) exclusion

---

[3]Both parties state that they found no Kentucky cases applying these exclusions, and research has revealed none.

precluded coverage where an employee of a contractor hired to remove obsolete telephone cables inadvertently cut a functioning cable during the project. The court reasoned:

> LISN's work at NYNEX was to mine the obsolete cable without disturbing the functioning cable and to identify and protect the functioning cable. NYNEX seeks recovery from LISN for the cost of repairing and replacing the functioning cables that LISN's employees incorrectly cut after the functioning cables became intertwined with the obsolete cables. Sections 2(j)(6) and VI(A)(2)(d)(iii) exclude coverage under the insurance policy for property damage that must be repaired or replaced because LISN's work was incorrectly performed on the property.

*Id.* at 630. *See also Century Indem. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355, 565-66 (S.C. 2002) (applying j(6) exclusion to preclude coverage for repairs to other parts of house damaged by faulty installation of stucco exterior); *Vintage Contracting, L.L.C. v. Dixie Bldg. Material Co.*, 858 So.2d 22, (La. App. 2003) (applying exclusions). In none of these cases was the insured contractor trespassing on the damaged property. Nor was the subcontractor of the insured here, for the state had issued an encroachment permit to cross the highway right-of-way.

Here, Centers was hired to bore under I-75 and lay the water pipe from the east side to the west side. Although the intended result was for the auger to emerge on the west side of the highway outside the state right-of-way, the auger instead became stuck and an attempt was made to retrieve it. As with the cleaning of the windows in *Alverson, supra*, while this retrieval effort was not expressly contemplated by the contract, it became part of Centers'

9

work incidental to the contract due to the turn of events. The work was, unfortunately, performed negligently, and the resulting damages are exactly the costs that plaintiff seeks to recover.

Plaintiff's reliance on *Standard Construction*, *supra*, is misplaced. In that case, the insured's liability arose out of its trespass on the property of the plaintiff. In the present case, there was no trespass since the encroachment permit was broad enough to cover the insured's activities on the state right-of-way.

The money that ACIC seeks to recover is the amount of the insured's contractual liability to the City of Williamstown for the property damage caused by the negligent workmanship of its subcontractor working on the right-of way with the permission of the Commonwealth. *Standard Construction* thus does not support plaintiff's position.

Therefore, because the terms of the business risk exclusions are unambiguous and apply to the damage for which ACIC seeks coverage, defendant is not obligated to provide coverage on plaintiff's claim as a matter of law.[4]

---

[4]The court thus need not reach the question of the applicability of the "subsidence" exclusion.

10

Therefore, having heard the parties, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. #22) be, and is hereby, **GRANTED,** and plaintiff's motion for summary judgment (Doc. #20) be, and is hereby, **DENIED.**


A separate judgment shall enter concurrently herewith.


This 14th day of August, 2006.

William O. Bertelsman

**WILLIAM O. BERTELSMAN, JUDGE**

11